# IN THE MATTER OF THE APPLICATION OF JAMES MCKEE FOR A WRIT OF HABEAS CORPUS.

U. S. CONSTITUTION, SIXTH AMENDMENT — TO WHAT APPLICABLE. FOURTEENTH AMENDMENT — TO WHAT APPLICABLE. SEC. 10, ART. 1, CONST. UTAH — SEC. 1295, R. S. 1898, VALID — CONVICTION UNDER — DUE PROCESS OF LAW. LEGAL JURY FOR TRIAL ON FELONY.

1. *U. S. Constitution, Sixth Amendment — To What Applicable.*
   The prohibitory provision of the Sixth Amendment to the Constitution of the United States applies exclusively to offenses against the United States and not to the respective States.

2. *Fourteenth Amendment.— To What Applicable.*
   The Fourteenth Amendment to the Constitution of the United States does not limit the power of the State governments. in the prosecution of criminals, to any particular mode of procedure in the selection of its jurors or manner of conducting its trials, but does require that such trials shall be conducted in due course of law according to the prescribed forms and judicial procedure of the State for the protection of the individual rights and liberties of its citizens.

3. *Sec. 10, Art. 1, Const. Utah—Sec. 1295, R. S. 1898, Valid—Conviction Under — Due Process of Law.*
   Sec. 10, Art. 1 of the Constitution of Utah is not in conflict with the federal Constitution or the amendments thereto, and a conviction under Sec. 1295, R. S. 1898, is legal and in due process of law, and not in violation of the Fourteenth Amendment to the Constitution of the U. S,

4.  *Legal Jury for Trial of Felony.*

>  Under Sec. 10, Art. 1, Const., and Sec. 1295, Rev. Stat. 1898,
>  a jury for the trial of one accused of grand larceny committed
>  since the State was admitted into the Union, may lawfully
>  consist of eight jurors.

Original application for a writ of habeas corpus.  Applicant was convicted of the crime of grand larceny in Uinta County, and now contends that he was convicted without due process of law; that only eight persons constituted the jury before whom he was tried, and that such action was in contradiction of Art. 1, Sec. 14, of the amendments to the Constitution of the United States ; and of Art. 6 of the amendments to the Constitution of the United States, and also that a conviction under Sec. 10, Art. 1, of the constitution of the State of Utah, is not a conviction by due process of law secured by the Constitution of the United States ; and that under such federal Constitution a State is forbidden to try a person charged with a felony, with less than twelve jurors.  *Writ denied.*

*J. W. N. Whitecotton, Esq.*, for petitioner.

*Hon. A. C. Bishop, Attorney General*, and *William A. Lee, Deputy Attorney General*, for the State.

MINER, J.

An information was filed against the petitioner in the district court of Uinta County, Utah, on the 10th day of August, 1897, charging him with the crime of grand larceny, alleged to have been committed in Uinta County, on the 19th day of July, 1897.  To this information the accused entered a plea of not guilty.  He was thereafter duly tried in the district court upon the charge contained in the information, under the constitution and laws of the State of Utah, by eight jurors duly empaneled and sworn,

and found guilty of the crime charged against him.    On the 24th day of August, 1897, under the provisions of the statute authorizing it, the petitioner was sentenced to imprisonment in the State prison for a period of six years. It does not appear from the record that any objection was raised, upon the trial, that the requisite number of jurors were not called or sworn in the case.    This writ of habeas corpus was sued out to secure his release from said imprisonment in the State prison.

The petitioner contends that he was tried and convicted without due process of law; that only eight persons constituted the jury before whom he was tried and convicted, and that such conviction is in contravention of Sec. 1, Art. 14, of amendments to the Constitution of the United States, which provides, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.    No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws," and of Art. 6, of the amendments of the Constitution of the United States, which provides among other things, that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed," and also that a conviction under Sec. 10, Art. 1, of the Constitution of the State of Utah, which provides, that "In capital cases the right of trial by jury shall remain inviolate.    In courts of general jurisdiction, except in capital cases, a jury shall consist of eight jurors.    In courts of inferior jurisdiction a jury

shall consist of four jurors. In criminal cases the verdict shall be unanimous. In civil cases three fourths of the jurors may find a verdict. A jury in civil cases shall be waived unless demanded," is not a conviction by due process of law, which is secured by the Constitution of the United States, and that under such federal Constitution a State is forbidden to dispense with a less number than twelve jurors in the trial of persons charged with a felony, and that the provision of the Constitution of the State of Utah is therefore in conflict with the federal Constitution in this respect.

Sec. 1295, Rev. Stat. 1898, enacted since the adoption of the Constitution, provides that " A trial jury in capital cases shall consist of twelve jurors. A trial jury in other criminal cases and in civil cases in the district courts shall consist of eight jurors; *provided*, that in civil cases and cases of misdemeanor, the jury may consist of any number less than eight upon which the parties may agree in open court. A trial jury in a justice's court, both in civil and criminal cases, shall consist of four persons, or of any number less than four upon which the parties may agree in open court."

Under Sec. 4361, Rev. Stat. 1898, grand larceny is punishable by imprisonment in the State prison for a term of not less than one year nor more than ten years.

The question for determination is, whether Sec. 10, of Art. 1, of the State Constitution, which provides, that, " In courts of general jurisdiction, except in capital cases, the jury shall consist of eight jurors," is repugnant to and in violation of the provisions of the Fourteenth Amendment to the federal Constitution, which provides, " Nor shall any State deprive any person of life, liberty, or property without due process of law." In other words, can a State, in its constitution, provide for a trial of

persons charged with a criminal offense, less than capital, by a jury composed of less than twelve jurors, and will such trial and conviction be by due process of law, within the meaning of the Fourteenth Amendment?

With reference to the sixth Amendment, upon which petitioner in part relies, it is now rendered clear from the decisions upon that provision in the Constitution that its prohibitory provision applies exclusively to the United States, and not to the respective States. This necessarily results from the rule that instruments of that character are to be construed with reference to the subject matter; and, as the subject matter of the Constitution was established and regulated by the federal government, nothing contained in it was entitled to operate upon the State governments, unless the intention is expressly declared, or appears by plain implication.

In *Twitchell* v. *Commonwealth*, 7 Wall, 321, the court held that "the Fifth and Sixth Amendments to the Constitution of the United States, relating to criminal prosecutions, were not designed as limits on State governments, in reference to their citizens, but exclusively as restrictions upon the federal power." A similar holding was made in *Baron* v. *City of Baltimore*, 7 Pet., 243; *Fox* v. *Ohio*, 5 How., 434; in re Kemmler, 136 U. S., 448.

Before discussing the question with reference to the Fourteenth Amendment, it may be advisable to refer to decisions of the highest courts of the land that bear upon that question.

In *Missouri* v. *Lewis*, 101 U. S., 22, Mr. Justice Bradley, in discussing the equality clause in the Fourteenth Amendment said: "The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States

separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding. If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the Fourteenth Amendment, there is no solid reason why there may not be such diversities in different parts of the same State. *   *   * If a Mexican State should be acquired by treaty, and added to an adjoining State, or part of a State, in the United States, and the two should be erected into a new State, it can not be doubted that such new State might allow the Mexican laws and judicature to continue unchanged in the one portion, and the common law and its corresponding judicature in the other portion. Such an arrangement would not be prohibited by any fair construction of the Fourteenth Amendment. It would not be based on any respect of persons or classes, but on municipal considerations alone, and a regard to the welfare of all classes within the particular territory or jurisdiction.''

In *Wilson* v. *North Carolina*, 169 U. S., 586, where the Governor of the State of North Carolina suspended a railroad commissioner appointed under the laws of the State, the question arose as to whether the State, through the action of its Governor and judiciary, had deprived the officer of his property without due process of law, or denied to him the equal protection of the laws. Mr. Justice Peckham, in delivering the opinion of the court; said: ''The procedure provided by a valid State law for the purpose of changing the incumbent of a State office will not in general involve any question for review by this court. A law of that kind does but provide for the carrying out and enforcement of the policy of a State with reference to its political and internal administration, and

a decision of the State court in regard to its construction and validity will generally be conclusive here. The facts would have to be most rare and exceptional which would give rise, in a case of this nature, to a federal question. Upon this subject it was said, in the case of *Allen* v. *Georgia*, 166 U. S., 138, 140, as follows: 'To justify any interference upon our part it is necessary to show that the course pursued has deprived, or will deprive, the plaintiff in error of his life, liberty, or property without due process of law.' Without attempting to define exactly in what due process of law consists, it is sufficient to say that, if the Supreme Court of a State had acted in consonance with the constitutional laws of a State and its own procedure, it could only be in very exceptional circumstances that this court would feel justified in saying that there had been a failure of due legal process.''

In *Garnett* v. *Jennings*, 44 S. W. Rep., 382, the court held: ''It is further objected by appellants that the whole law of distress is contrary to, and in conflict with, both the federal and State constitutions, as depriving the tenant of his property without due process of law. But the words 'due process of law' do not necessarily imply a trial by jury, as seems to be intended on behalf of the appellants. 'The better and larger definition of ''due process of law '' is that it means law in its regular course of administration through courts of justice.' 2 Kent, Comm. 13. The words were intended to have the same meaning as the words 'by the law of the land' in Magna Charta. *Murray* v. *Improvement Co.*, 18 How., 276.''

In the case of *Rowan* v. *The State*, 30 Wis., 129, the court, in speaking of the Fourteenth Amendment, said: '' But its design was not to confine the States to a particular mode of procedure in judicial proceedings, and prohibit them from prosecuting for felonies by information instead

of by indictment, if they chose to abolish the grand jury system. And the words 'due process of law' in the amendment do not mean and have not the effect to limit the powers of State governments to prosecutions for crimes by indictment; but these words do mean law in its regular course of administration, according to prescribed forms, and in accordance with the general rules for the protection of individual rights. Administration and remedial proceedings must change, from time to time, with the advancement of legal science and the progress of society ; and, if the people of the State find it wise and expedient to abolish the grand jury and prosecute all crimes by information, there is nothing in our State constitution and nothing in the Fourteenth Amendment. to the Constitution of the United States which prevents them from doing so.''

In Vol. 2, Hare's American Constitutional Law, p. 859, it is said :

''The right of trial by jury depends upon the provisions by which it is specifically secured rather than on the phrase 'due process of law,' embodied in the Fifth and Fourteenth Amendments ; and as this is the only clause in the national Constitution bearing on the subject which is applicable to the States, they are free to adopt any mode of procedure which is consonant with the principles of jurisprudence and calculated to promote the ends of distributive justice. The federal guaranty is confined to the national courts, and does not preclude the States from authorizing their tribunals to decide civil or even criminal issues without submitting them to a jury.''

And, as said in *Pearson* v. *Yewdall*, 95 U. S., 294, '' When ample provision is made for an inquiry as to damages before a competent court, and for a review of the proceedings of the court of original jurisdiction upon appeal to the highest court of the State, this is due process

of law within the meaning of that term as used in the federal Constitution."

Again, in *Kennard* v. *Morgan*, 92 U. S., 480, it is held, "It is not possible to hold that a party has, without due process of law, been deprived of his property when, as regards the issues affecting it, he has, by the laws of the State, had a fair trial in the court of justice according to the modes of proceeding applicable to such a case."

In *Walker* v. *Sauvinet*, 92 U. S, 90, it is said: "The States, so far as this amendment is concerned, are left to regulate trials in their own courts in their own way. A trial by jury in suits at common law pending in the State courts is not, therefore, a privilege or immunity of national citizenship, which the States are forbidden by the Fourteenth Amendment to abridge. A State can not deprive a person of his property without due process of law; but this does not necessarily imply that all trials in the State courts affecting the property of persons must be by jury. This requirement of the Constitution is met if the trial is had according to the settled course of judicial proceedings. Due process of law is process due according to the law of the land. This process in the States is regulated by the law of the State." 2d Hare's Constitutional Law, pp. 751, 752.

In *Hurtado* v. *California*, 110 U. S., 516, it is said: "The Constitution of the United States was ordained, it is true, by descendants of Englishmen, who inherited the traditions of English law and history; but it was made for an undefined and expanding future, and for a people gathered and to be gathered from many nations and of many tongues. * * * In this country written constitutions were deemed essential to protect the rights and liberties of the people against the encroachments of power delegated to their governments, and the provisions of

Magna Charta were incorporated into Bills of Rights.
They were limitations upon all the powers of government,
legislative as well as executive and judicial.  *  *  *
Applied in England only as guards against executive
usurpation and tyranny, here they have become bulwarks
also against arbitrary legislation; but, in that application,
as it would be incongruous to measure and restrict them
by the ancient customary English law, they must be held
to guarantee not particular forms of procedure, but the
very substance of individual rights to life, liberty, and
property.  *  *  *  The natural and obvious inference is,
that in the sense of the Constitution, ' due process of law '
was not meant or intended to include, *ex vi termini*, the
institution and procedure of a grand jury in any case.
The conclusion is equally irresistible, that when the same
phrase was employed in the Fourteenth Amendment to
restrain the action of the States, it was used in the same
sense and with no greater extent; and that if in the adop-
tion of that amendment it had been part of its purpose to
perpetuate the institution of the grand jury in all the
States, it would have embodied, as did the Fifth
Amendment, express declarations to that effect.   Due
process of law in the latter refers to that law of the land
which derives its authority from the legislative powers
conferred upon congress by the Constitution of the United
States, exercised within the limits therein prescribed, and
interpreted according to the principles of the common law.
In the Fourteenth Amendment, by parity of reason, it
refers to that law of the land in each State, which derives
its authority from the inherent and reserved powers of the
State, exerted within the limits of those fundamental
principles of liberty and justice which lie at the base of
all our civil and political institutions, and the greatest
security for which resides in the right of the people to

make their own laws, and alter them at their pleasure."
*Murray's Lessee* v. *Hoboken L. & Imp. Co.*, 18 How.,
230; *Barbier* v. *Connolly*, 113 U. S., 27, 31; In re
Kemmler, 136 U. S., 448; Ex parte Converse, 137 U. S.,
624; *Hallinger* v. *Davis*, 146 U. S., 314; *Hodgson* v.
*Vermont*, 168 U. S., 263.

Following these decisions and upon such interpretation
of the federal constitution, several of the States have
adopted constitutions with reference thereto.   In the
States of Michigan, Colorado, Florida, and Louisiana, the
constitution authorizes the legislature, in civil cases, to
provide for a trial by jury of less than twelve men.   In
New Hampshire and Massachusetts laws may be made for
the government of the army and navy without providing
for a trial by jury.   In California the constitution pro-
vides that a jury may be waived by both parties in all
criminal cases, not amounting to a felony.   In New
Mexico the accused may in all cases waive a jury trial.
In Delaware and North Carolina, the legislature may pro-
vide in criminal cases, not infamous, other means of trial.
In Iowa and South Carolina it is provided  that all
offenses, less than a felony, in which the penalty does not
exceed $100, or 30 days' imprisonment, shall be tried
summarily before a justice of the peace.   Stimpson's
American Statute Law.

The Fourteenth Amendment is a distinct restriction on
the States and their courts, and the Fifth and Fourteenth
Amendments have reciprocal prohibitions, and so far as
concerns this case, are in the same words.   But in an-
other provision the Constitution prescribes a common law
jury in federal courts.   No such provision exists in regard
to State courts.   The Fourteenth Amendment is compara-
tively recent, and its history, and the evils existing or
anticipated, which it was intended to remedy or prevent,

are well known. It was intended, at least incidentally, to more definitely define the relation of the several States to the general government, and especially to define the rights of citizens of the United States within the several States, and the right of all persons in each State to equal protection under its laws. Sec. 1, therefore, declares that citizens of the United States are citizens of the State in which they reside, and that no State shall by law abridge their privileges and immunities as citizens, or deprive any person of life, liberty, or property without due process of law, or deny to any person within its jurisdiction the equal protection of the laws. The whole section clearly shows that equal rights, immunities, and protection in each State, in accordance with its laws, are declared and enjoined. It does not purport to legislate for the State, or define what its laws shall be, or how its courts shall be composed, or what their process or proceedings shall be. These the State can not justly yield without destroying its autonomy. The existence of the several States, with constitutions and laws, and courts to administer the laws, is assured; but equal rights of citizenship and equal personal rights of all persons affected by the administration of the laws are the only things commanded.

There are many cases, as we have seen, in which there are comments on the words ''due process of law,'' but no case has been referred to in which they have been held to mean more than the process which is due alike to all persons in the administration of the law to which they are subject. They forbid the arbitrary punishment of any man on account of race, color, religious or political opinions, or on suspicion or without trial in the due course prescribed by the laws for all persons accused.

In *Garnette* v. *Jennings*, *supra*, the words '' Due process of law,'' are defined to mean, law in the regular course of

administration through the courts, and it is said they have the same meaning as the words "by law of the land," in Magna Charta.    This seems to be a good definition, and if the language of the amendment be changed to read "due process of the law of the land," it does not change its meaning.    The law of the land necessarily means the law of the State where the offense is committed and where the trial takes place.    The prohibition of this amendment is directed to the Constitution, and can not mean the State must observe the due process of the law of some other jurisdiction over which it has no control. Neither can it refer to due process of law under the law of the United States, for the United States has only stated offenses limited to the subjects over which it has jurisdiction.    The Constitution of the United States can not as to the States be held to be the sole, unbending rule as to the method of procedure, when dealing with the life, liberty, and property of individuals in the several States. Such a rule would deprive the States of their right to regulate their procedure, laws and rules of practice in their own courts, so as to protect life, liberty, and property by such due process of law as should be enacted with reference to the Constitution of the United States which was "framed for an undefined and expanding future, and for people gathered, and to be gathered from many nations and many tongues."    The great purpose doubtless was not to contract the power to furnish modes of procedure in courts of justice, but to secure the right of trial by jury in a legal proceeding, enforced by public authority, although only designed by the law-making power of a State in furtherance of the general public good, and to protect life, liberty, and property by due process of law.

It is quite clear that this amendment only requires that each State shall observe the due process provided by its own laws in all cases and in respect to all persons.

In *Wilson* v. *North Carolina*, 169 U. S., 593, above referred to, it is held in substance, that a federal question does not arise under the Fourteenth Amendment, when the proceedings in a State court have been under a valid law, regularly, and in accordance with its laws. It is there said that in such a case it would rarely happen that a federal question would arise.

The cases heretofore referred to, both civil and criminal in their nature, tend to show that the words "due process of law" only require proceedings in accordance with the laws of the State, and do not prohibit a court, organized in accordance with the constitution and laws of the State, though not in accordance with the common law, or the law under which the federal courts are organized, from trying one accused of a felony, or hearing any matter within their jurisdiction. No cases have been cited holding a contrary doctrine.

Only the Fifth and Fourteenth Amendments contain the words "due process of law." This is the only clause found in the Constitution applicable to the States. In it the States are left free to adopt any mode of procedure which is consistent with the principles of jurisprudence calculated to promote the ends of justice. The Constitution of the United States "was framed for an indefinite and expanding future, and for people gathered and to be gathered from many nations and many tongues," and the term "due process of law" should be "held to guarantee no particular form of procedure, but the very substance of individual right to life, liberty, and property." The phrase should receive a comprehensive interpretation, and no procedure be treated as without its meaning or unconstitutional, which duly provides for the trial of criminal cases before a court of competent jurisdiction; for bringing the party into court and notifying

him of the charge he is required to meet; for giving him an opportunity to be heard in his defense, for trial and the judgment of the court, and for appeal to the highest tribunal in the State for judgment. "Administrations and remedial proceedings in courts of justice must change from time to time with the advancement of legal science and the progress of society, * * * and if the people of a State find it wise and necessary to change the procedure of their courts, there is nothing in the amendment to prevent their doing so."

The Fourteenth Amendment was not designed to confine the States to a particular mode of procedure in judicial proceedings. It does not mean nor has it the effect to limit the power of State governments in the prosecution of criminals to any particular mode of procedure in the selection of its jurors or manner of conducting its trials, but did require that such trials shall be conducted in the due course of the administration of justice according to the prescribed forms and judicial procedure of the State for the protection of the individual rights and liberties of its citizens. That which the common law tolerated might be regarded as due process of law, but methods and procedure which were unknown to the common law can not be discarded if they are consistent with the cardinal principles and groundwork which are necessary to the administration of justice, in the several States.

As said in *Hurtado* v. *California, supra,* "It follows that any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which requires and preserves these principles of liberty and justice, must be held to be due process of law."

We therefore hold that the proceedings by which the

petitioner was tried and convicted were legal proceedings, under a valid law of the State, enforced by public authority, and although not sanctioned by long custom or age, but newly devised in the discretion of the law-making power of the State, in furtherance of the general public good, yet such procedure has due regard to the rights, and preserves the principles of liberty and justice, in conformity with the provisions of the Fourteenth Amendment to the Constitution of the United States, and therefore, the conviction is held legal and by due process of law.

"The writ of Habeas Corpus is denied."

BARTCH, C. J., and BASKIN, J., concur.