STATE *v.* GEORGE WARNER.

February Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed May 1, 1917.

*Evidence—Remoteness — Sanity — Harmless Error — Presumption of Sanity in Criminal Cases—Burden of Proof—Instructions.*

The remoteness of evidence offered is ordinarily a question addressed to the discretion of the trial court.

Where a respondent in a criminal prosecution introduced evidence tending to show that he was insane about two years before the commission of the offense charged, the State, in introducing evidence of his sanity, was not limited to the times covered by respondent's evidence.

Improper evidence admitted to establish an undisputed fact is harmless error.

At the outset of a criminal trial the law presumes that the respondent possesses the requisite degree of mental capacity to make him criminally responsible.

In a criminal trial the burden of proving the respondent sane is upon the State; the presumption of sanity answers the requirement of this burden until countervailing evidence challenges it, but then, upon all the evidence in the case, sanity must be affirmatively established beyond a reasonable doubt, or there can be no conviction.

Where an instruction does not follow the exact language of a request, but recognizes a correct rule of law contended for therein, and adequately places it before the jury, nothing more is required.

Charge construed, and *held*, not misleading to the jury.

INDICTMENT for murder. Plea, not guilty. Trial by jury at the June Term, 1915, Windsor County, *Fish*, J., presiding. Verdict, guilty of murder in the first degree. Respondent excepted. The opinion states the case.

*Fred G. Bicknell* for the respondent.

*Herbert G. Barber,* Attorney General, and *Bert E. Cole,* State's Attorney, for the State.

POWERS, J. George Warner has been convicted of murder in the first degree. The homicide was committed in the town of Andover on November 4, 1914, and Henry Wiggins was its victim. The respondent brings here but two questions, neither of which requires any particular statement of the evidence. He introduced some evidence tending to show that he was insane at the time of the homicide, and that this mental unsoundness developed about two years before that event. Thereupon the state produced various witnesses, who had known the respondent for many years preceding the trial, and after they had testified to certain facts, circumstances and observations, they were allowed subject to the respondent's exception, to predicate thereon opinions of his mental soundness. The only question raised below or made here regarding the admissibility of this testimony is that it was too remote, in view of the evidence of the respondent, and it is insisted that these witnesses should have been limited to opinions based upon facts observed within the two years preceding the crime,—the period covered by the respondent's evidence. The exception is without merit. Remoteness is ordinarily a question addressed to the discretion of the trial court. *State* v. *Bean,* 77 Vt. 384, 60 Atl. 807; *Smith* v. *C. V. Ry. Co.,* 80 Vt. 208, 67 Atl. 535; *Belka* v. *Allen,* 82 Vt. 456, 74 Atl. 91; *Perkins* v. *Perley,* 82 Vt. 524, 74 Vt. 231. There is nothing in the record before us to take the case out of the rule.

When a respondent puts his mental condition in issue by the introduction of evidence tending to show his insanity, he opens an inquiry that may take a very wide range; how wide, depends upon the circumstances of the case in hand. Underhill, Cr. Ev. § 160; 1 Wig. Ev. § 233. Broadly speaking, his whole life may be canvassed for evidence bearing upon the question; and his ancestry and family history may be investigated. In this very case, the respondent properly introduced evidence tending to show insanity in his ancestors, and asked the jury to believe that the seeds of the malady came to him by inheritance. In these circumstances, if not otherwise, it was proper for the state to show that mental disease had not appeared in the respondent during the time covered by its witnesses. For this very fact was, of itself, a circumstance bearing upon the probability that it developed at

all. Nor can a respondent by limiting his own evidence to a certain period of time, thereby circumscribe the inquiry or affect the right or duty of the prosecution. Moreover, sound public policy and a proper regard for the rights and interests of a respondent in a capital case, whose mental responsibility is an issue at his trial, forbid that he should be allowed to concede away his rights by admitting that he was sane at any previous date or time. When the issue is once raised, it is the duty of the state to produce sufficient relevant evidence to establish his legal responsibility by the measure of proof required by the law. It is as much the duty of the state to protect an insane man from conviction, as it is to prevent a sane man from escaping that result. We cannot say from the record that the ruling complained of resulted in a wider range of- inquiry than was allowable. Besides, the respondent's position only amounts to this: Improper evidence was admitted to establish an undisputed fact—which is harmless error. *McKindly* v. *Drew,* 71 Vt. 138, 41 Atl. 1039; *Coolidge* v. *Taylor,* 85 Vt. 39, 80 Atl. 1038; *First Nat. Bank* v. *Bertoli,* 88 Vt. 421, 92 Atl. 970; *State* v. *Saidell,* 70 N. H. 174, 46 Atl. 1083; 85 Am. St. Rep. 627; *Dietz* v. *Big Muddy C. & I. Co.,* 263 Ill. 480, 105 N. E. 289; *Watters* v. *Brown,* 177 Ala. 78, 58 South. 291; *Standard Life & Ac. Ins. Co.* v. *Schmaltz,* 66 Ark. 588, 53 S. W. 49, 74 Am. St. Rep. .112.

At the close of the charge, the respondent excepted to the failure of the court to instruct the jury that: "The burden of proof as to sanity, in cases of murder of the first degree, and with premeditation, enters in as an element of the crime." From the course of the trial as shown by the record, it is manifest that the meaning of this somewhat obscure exception was that the respondent was entitled to an instruction that the burden was on the state to establish the respondent's sanity as an intrinsic element of the crime, and to establish it beyond a reasonable doubt. This is unquestionably the law.

Sanity is the normal condition of the human mind. Consequently, the law, in reliance upon this self-proving assertion, presumes at the outset of the trial, that the respondent in any given case possesses the requisite degree of mental capacity to make him criminally responsible. And this presumption answers the administrative requirements of the law until evidence comes into the case from some source tending to show otherwise. But if such evidence appears, it then becomes the duty of the prosecu-

tion to establish the respondent's sanity as an essential ingredient of the crime, and to establish it beyond a reasonable doubt. A frequent way of stating this rule, and one made use of below in a part of the charge unexcepted to, is this: "The law presumes the respondent to be sane until the contrary is shown by evidence; and this presumption continues until overcome by evidence to the contrary." Even so accurate a legal writer as Judge Cooley uses language much like this in *People* v. *Garbutt*, 17 Mich. 9, 97 Am. Dec. 162. Nevertheless, we consider this form of statement unfortunate and calculated to mislead. The expression "overcome by evidence" naturally indicates that the respondent must overcome the presumption,—must produce evidence to outweigh it. Such is not the law. It is not the law of Judge Cooley's opinion. It is not the law of the charge below, taken as a whole. Insanity is not an affirmative defence. It is a means of meeting the case made by the prosecution and weakening one of its essentials; beyond this it need not go. "Sanity is an ingredient in crime as essential as an overt act," is the way Chief Justice Breese correctly puts it in *Chase* v. *People*, 40 Ill. 352. It is necessarily involved in every criminal trial, and the burden of proof is always and at all times on the state. The presumption of sanity answers the requirement of this burden until countervailing evidence challenges it; but then, upon all the evidence in the case, sanity must be affirmatively established beyond a reasonable doubt. Otherwise, there can be no conviction. The duty of going forward on this subject is on the respondent, but nothing more. *State* v. *Doherty*, 72 Vt. at page 403, 48 Atl. 658, 82 Am. St. Rep. 951; 2 Chamb. Ev., § 974; 1 Whart. & Stillé, Med. Jur., § 315; *Davis* v. *United States*, 160 U. S. 469, 40 L. ed. 499, 16 Sup. Ct. 353 and cases cited. The charge of the court below was in harmony with the foregoing views. While it did not follow the exact language of the respondent's request on that point it recognized the rule of law contended for, and adequately placed the same before the jury. Nothing more was required. *State* v. *Eaton*, 53 Vt. 574.

The court gave a supplemental instruction on this subject as follows: "The defence of insanity is made by the respondent. He brings it here and it is for him, in the first instance, to make proof on that issue. But when it is in the case, * * * and you are considering the right and wrong of that issue, you must find the guilt of the respondent established beyond any reasonable

doubt; which means, as applied to insanity, that at the time of the killing, the act was not the result of insanity." Complaint is now made of the expression "make proof on that issue"; and the respondent treats it as meaning "make proof of that issue." It is apparent, however, that it was only intended to mean that the respondent was required to produce proof or evidence on that issue. The instruction as a whole "breathes the true spirit and doctrine of the law," and, especially in view of the context, there is no fair ground to say that the jury was misled by it. *Fassett* v. *Roxbury,* 55 Vt. 552; *Ide* v. *Boston & Maine Railroad,* 83 Vt. 66, 74 Atl. 401. We have no occasion to give further consideration to the character and effect of the presumption of sanity to inquire whether it is in the nature of evidence or a mere administrative expedient that becomes *functus officio* as soon as evidence of insanity comes into the case,—for, though the charge gave it evidential effect, no exception was taken and no question thereon is made here.

We have patiently examined the transcript and have carefully considered the arguments of counsel on all points presented; we find no error and are satisfied that the respondent had a fair and impartial trial, and that the result was fully warranted by the evidence.

*Judgment that there is no error in the record and that the respondent takes nothing by his exceptions. Let sentence pass and execution be done.*