# State of Vermont v. Clifford Messier

[497 A.2d 740]

No. 84-224

Present: Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed May 14, 1985

John J. Easton, Jr., Attorney General, Glenn A. Jarrett, Assistant Attorney General, Montpelier, Philip H. White, Orleans County State's Attorney, Thomas D. Anderson, Deputy State's Attorney, and Timothy Collins, Law Clerk (On the Brief), Newport, for Plaintiff-Appellant.

Andrew B. Crane, Defender General, and David W. Carpenter and Henry Hinton, Appellate Defenders, Montpelier, for Defendant-Appellee.

**Allen, C.J.** This is an interlocutory appeal from a decision of the Orleans District Court, holding Vermont's insanity defense statute, 13 V.S.A. § 4801(b), unconstitutional. Clifford Messier, the defendant, stands charged with murder in the first degree. During pretrial proceedings, Messier gave notice of his intention to rely upon a defense of insanity, in accordance with V.R.Cr.P. 12.1, and then requested the court to instruct the jury that the State bears the burden of proof of a defendant's sanity beyond a reasonable doubt, notwithstanding the Vermont statute placing the burden of proof of insanity upon the defendant. The court ruled that the statute was unconstitutional under both the United States and Vermont Constitutions, and granted the State permission to appeal that ruling pursuant to V.R.A.P. 5 and 13 V.S.A. § 7403(c)(3). We reverse.

Prior to its amendment in 1983, § 4801 defined insanity for purposes of criminal prosecutions, but did not allocate the burden of proof as to this issue. This Court has long held that sanity is an essential element in a criminal prosecution, and that the State bears the burden of proving the defendant's sanity beyond a reasonable doubt. State v. Gokey, 136 Vt. 33, 37, 383 A.2d 601, 603 (1978); State v. Bishop, 128 Vt. 221, 227, 260 A.2d 393, 398 (1969); State v. Warner, 91 Vt. 391, 394,

101 A. 149, 150 (1917). The 1983 amendment added the following language as § 4801 (b):

> The defendant shall have the burden of proof in establishing insanity as an affirmative defense by a preponderance of the evidence.

The appellee contended, and the District Court agreed, that this enactment, although shifting the burden of proof to the defendant, failed to abrogate the common law rule that sanity is an essential element of the crime. Thus, the appellee contends, the amendment violates the due process clause of the Federal Constitution, as interpreted in *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975), by imposing upon the defendant the burden of proving the absence of an essential element of the crime. In addition, the appellee contends that the due process provision of the Vermont Constitution prohibits placing the burden of proving insanity upon the defendant.

## I.

A basic notion of due process is that the State must prove beyond a reasonable doubt every element necessary to constitute the crime with which a defendant is charged. *In re Winship*, 397 U.S. 358, 364 (1970); *State* v. *Dusablon*, 142 Vt. 95, 97, 453 A.2d 79, 81 (1982).

This principle does not in itself prevent the legislature from requiring defendants rather than the State to bear the burden of proving their insanity. In *Leland* v. *Oregon*, 343 U.S. 790 (1952), the United States Supreme Court found constitutional an Oregon statute requiring defendants to prove their insanity beyond a reasonable doubt. This holding was not disturbed when the Court dismissed an appeal challenging a similar statute. *Rivera* v. *Delaware*, 429 U.S. 877 (1976).

The appellee's claim here is based instead upon two other Supreme Court cases, *Patterson* v. *New York*, 432 U.S. 197 (1977), and *Mullaney* v. *Wilbur, supra*. These cases established that the State's burden under *Winship* may be met even though the burden of proof on a factor mitigating the crime or exculpating the defendant is placed upon the defendant, if that factor is not one of the elements defining the crime. Thus, where a statute defined the elements of second-degree murder

as the intent to cause the death of another person, and causing the death of another person, there was no constitutional violation where the defendant was required to prove that he acted under the influence of extreme emotional distress, in order to mitigate the offense to manslaughter. *Patterson, supra.* On the other hand, where a statute defined the elements of murder as an unlawful killing with malice aforethought, the defendant could not be required to prove the absence of such malice in order to mitigate the offense to manslaughter. *Mullaney, supra.*

■ Under *Patterson* and *Mullaney,* legislatures are permitted to reallocate the burden of proof as to certain matters by redefining crimes to eliminate those matters as elements of the crime, and to place the burden of proof of their absence upon the defendant as mitigating or exculpatory matters. "Our opinions suggest that the prosecution's constitutional duty to negate affirmative defenses may depend, at least in part, on the manner in which the State defines the charged crime." *Engle* v. *Isaac,* 456 U.S. 107, 120 (1982).

The court below found that the legislature's reallocation of the burden of proof as to insanity was incomplete. The legislature, according to the trial court, was required explicitly to overrule the common law rule defining sanity as an essential element of crime before it placed the burden of proving insanity upon the defendant. As it now stands, the court held, the statutory framework resembles that in *Mullaney,* rather than that in *Patterson.*

The opinions of this Court declaring sanity to be an essential element of crime have consistently distinguished between essential elements and affirmative defenses. In *State* v. *Warner, supra,* 91 Vt. at 394, 101 A. at 150, it was stated:

> Insanity is not an affirmative defence. It is a means of meeting the case made by the prosecution and weakening one of its essentials; beyond this it need not go.

This formulation has since been repeated, most recently in *State* v. *Gokey, supra,* 136 Vt. at 37, 383 A.2d at 603, and in *State* v. *Bishop, supra,* 128 Vt. at 227, 260 A.2d at 398. Thus, the source of the common law rule making sanity an essential element clearly distinguished between essential elements and affirmative defenses.

Section 4801 (b) places the burden of proving insanity upon the defendant "as an affirmative defense." This language demonstrates an intent by the legislature to eliminate sanity as an essential element of crime. Where the legislative intent to effectuate a change in the common law is clearly and plainly expressed, it will be recognized. *Fairchild* v. *West Rutland School District,* 135 Vt. 282, 286, 376 A.2d 28, 31 (1977). The legislature was not required to use words which expressly eliminate sanity as an essential element where its language is inconsistent with any other interpretation. Section 4801 (b) comports with the requirements of *Mullaney* and *Patterson.*

## II.

The appellee also contends that § 4801 (b) violates the Vermont Constitution in that it requires the defendant to prove the existence of facts mitigating the offense or exculpating the defendant.

Chapter I, Article 10 of the Vermont Constitution provides that no person may be justly deprived of his liberty, "except by the laws of the land." This phrase is synonymous with "due process of law." *State* v. *Stimpson,* 78 Vt. 124, 132–33, 62 A. 14, 17 (1905); *Quimby* v. *Hazen,* 54 Vt. 132, 139 (1881).

This Court has never placed the burden of proof rule in insanity cases upon a constitutional footing. See, e.g., *State* v. *Gokey, supra,* 136 Vt. at 37, 383 A.2d at 603; *State* v. *Bishop, supra,* 128 Vt. at 227, 260 A.2d at 398; *State* v. *Warner, supra,* 91 Vt. at 394, 101 A. at 150. The rule as to the burden of proof derived from the status of sanity as an essential element, not from a view that the Vermont Constitution requires the State to prove the absence of any mitigating or exculpatory matters. See, e.g., *State* v. *Wilkins,* 144 Vt. 22, 25, 473 A.2d 295, 296 (1983) (defendant bears burden of proving entrapment).

The defendant's position, that the State must prove the absence of excuse, would present the legislature with the choice of eliminating an affirmative defense altogether, or requiring the State to prove its absence. Due process does not require this. Generally speaking, the task of defining crimes be-

longs to the legislature, *State v. Shady,* 100 Vt. 404, 405, 138 A. 777, 777 (1927), and the definition of circumstances under which exculpatory or mitigating matters will be recognized is likewise addressable by the legislature.

█ There is no impediment under the Vermont Constitution to requiring the defendant in a criminal case to prove his insanity where he intends to rely upon a defense of insanity to excuse his conduct.

## III.

█ Section 4801(b) does not on its face offend either the Vermont or the United States Constitution. However, in the context of a particular case, the evidence offered to prove insanity may also relate to the defendant's state of mind, which remains an essential element to be proved beyond a reasonable doubt by the State. In such a case, § 4801(b) cannot operate to relieve the State of its burden.

A person is not responsible for criminal conduct due to his insanity if, at the time of such conduct, as a result of mental disease or defect, he lacked adequate capacity either to appreciate the criminality of his conduct, or to conform his conduct to the requirements of law. 13 V.S.A. § 4801(a)(1). Evidence offered by a defendant to prove such a mental disease or defect may or may not also operate to disprove the existence of mental states, such as intent or premeditation, which might be essential elements of the crime.*

This overlap between the insanity defense and the mental elements of crime has already been recognized by this Court.

---

* For example, when a defendant claims that due to a mental disease he believed that he was squeezing lemons, when in fact he was strangling his victim, the State's burden of proving the specific intent element of murder would require the State to prove that, in fact, the defendant knew he was strangling a person. In such a case, the defendant could not be required to prove the existence of the mental state he alleges. On the other hand, a defendant may claim that a mental disease caused him to believe that his homicidal act was commanded by God. Such a mental state would not disprove the existence of a specific intent to kill, and so the defendant may be required to prove that he suffered from such a delusion. See American Law Institute, Model Penal Code § 4.01 (1962), Commentary to Tent. Draft No. 4, 1955, at 156; Note, *Mens Rea and Insanity,* 28 Me. L. Rev. 500, 521 (1976).

In *State* v. *Smith,* 136 Vt. 520, 527–28, 396 A.2d 126, 130 (1978), the nature of the "diminished capacity" doctrine was discussed:

> The [diminished capacity] concept is directed at the evidentiary duty of the State to establish those elements of the crime charged requiring a conscious mental ingredient. There is no question that it may overlap the insanity defense in that insanity itself is concerned with mental conditions so incapacitating as to totally bar criminal responsibility. . . . Evidence offered under this rubric [and thus under the insanity defense to the extent of the overlap] is relevant to prove the existence of a mental defect or obstacle to the presence of a state of mind which is an element of the crime, for example: premeditation or deliberation.

When the defendant puts in issue whether he had the mental state required for the offense charged, the State's burden of proof remains unchanged. The State must prove beyond a reasonable doubt every element of the crime charged. It is the duty of the trial court, in such a case, to ensure that the burden of proof is correctly allocated. The defendant's mental state, insofar as relevant to a requisite element, must be proved by the State.

The necessity of permitting the introduction of evidence of insanity in order to negate the mental elements of crime, and of placing the burden of proof as to the mental elements upon the State, is recognized elsewhere. See, e.g., *State* v. *Shaw,* 106 Ariz. 103, 113, 471 P.2d 715, 725 (1970), *cert. denied,* 400 U.S. 1009 (1971) (statute requiring bifurcation and excluding all evidence of insanity in guilt phase of trial held unconstitutional); *People* v. *Wetmore,* 22 Cal. 3d 318, 327, 583 P.2d 1308, 1314, 149 Cal. Rptr. 265, 271 (1978) (evidence negating intent admissible in guilt phase whether or not it is also probative of insanity); *State ex rel. Boyd* v. *Green,* 355 So. 2d 789, 794 (Fla. 1978) (statute requiring bifurcation and excluding all evidence of insanity in guilt phase held unconstitutional); *State* v. *Burnham,* 406 A.2d 889, 895–96 (Me. 1979) (State must prove culpable state of mind; defendant's evidence relevant to insanity as well as to state of mind must be admitted during guilt phase if offered to negate state of mind); *Novosel*

v. *Helgemoe,* 118 N.H. 115, 124, 384 A.2d 124, 129 (1978) (where insanity negates mental element, bifurcated hearing in which evidence of insanity is excluded from guilt phase may not be appropriate).

The failure of the trial court to correctly allocate the burden of proof as to the defendant's mental state could conceivably, in a particular case, result in a violation of the defendant's constitutional right to have all the elements of the offense proved beyond a reasonable doubt. This possibility does not invalidate the statute generally. "[A] statute . . . may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question." *Little* v. *Streater,* 452 U.S. 1, 16 (1981) (quoting *Boddie* v. *Connecticut,* 401 U.S. 371, 379 (1971)). Thus, a statute may be "valid under one state of facts but not another." *Staub* v. *City of Baxley,* 355 U.S. 313, 330 (1958) (Frankfurter, J., dissenting).

Where the State proves every element of the crime charged, 13 V.S.A. § 4801(b) is constitutional. Accordingly, the decision below cannot stand.

*Reversed and remanded.*