# Andrew and Joanne Arnold v. Gerald P. Cantini and Trask & Waite Realtors, Inc.

[573 A.2d 1193]

No. 88-457

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed March 30, 1990

*William J. Bloomer* of *Bloomer & Bloomer, P.C.*, Rutland, for Plaintiffs-Appellants.

*Harold E. Eaton, Jr.*, of *Miller, Cleary & Faignant, Ltd.*, Rutland, for Defendant-Appellee.

**Peck, J.** Plaintiffs appeal from a jury verdict in favor of defendant listing broker in an action brought to recover an earnest money deposit of $10,000. We reverse and remand.

On October 10, 1982, plaintiffs Joanne and Andrew Arnold signed a purchase and sale agreement for a parcel of land in Winhall, Vermont. Hickory Hills, Inc. owned the property, and the agreement provided that Hickory Hills would build a house on the lot according to specifications attached to the agreement. The Arnolds gave a $10,000 earnest money deposit to Trask & Waite Realtors, Inc. for deposit in a client's trust account. John Waite, the realtor, signed for Trask & Waite. The agreement provided that the deposit was to be released at the closing, set for October 22.

The closing did not take place on October 22. The Arnolds retained a local attorney, Gerald Cantini, and on October 25, executed a power of attorney giving Cantini authority to act for them in transactions relating to the property. Andrew Arnold mailed a check for $20,000 to John Waite so that work could begin, enclosing a note saying that "[p]er our verbal agreement, you will wait for Mr. Cantini's permission to use the funds." There was conflicting testimony about a telephone conversation between Cantini and Waite, in which Cantini purportedly authorized the release of both the $20,000 and the $10,000 held in escrow. It is undisputed that $30,000 of the fund was ultimately released to Hickory Hills, and that Hickory Hills paid Trask & Waite $10,000 in connection with the deal.

Building commenced on the house, but no closing ever took place. In January of 1983, the Arnolds occupied the house. Plaintiffs had made a number of progress payments, and had withheld only $2,000 of the $130,000 price agreed upon. Green

Mountain Bank held a mortgage on the property, and when Hickory Hills failed to pay, the Bank foreclosed. The Arnolds bought the property from the Bank, and paid off delinquent taxes and other liens.

Plaintiffs sued Gerald Cantini and Trask & Waite to recover the $10,000 deposit. By this time, Hickory Hills had gone out of business, and its owner, Steven Bruehl, could not be located. Plaintiffs settled with Cantini. The case was tried against Trask & Waite, and the jury returned a verdict for defendant. This appeal ensued.

Plaintiffs raise three issues on appeal. The first two concern the content of the trial judge's charge to the jury. Plaintiffs assert that the jury instructions mischaracterized the transaction in question, because specific contractual language was not mentioned, and because the judge removed the issue of the propriety of the payment of a broker's commission from the jury's consideration. Plaintiffs also claim that the trial court erred in refusing to permit plaintiffs' attorneys to split the closing argument between them.

First, plaintiffs assert that the court's charge to the jury concerning Trask & Waite's obligations with respect to the deposit did not emphasize the details of the particular purchase and sale agreement. The court's charge was as follows:

> Although a real estate broker is ordinarily considered the agent of the seller, he has a contractual duty to the buyer and that is not to disburse the purchaser's earnest money or down payment if the contract is broken by the seller.
>
> In order to find the defendant liable under this theory of recovery, you must be convinced by a preponderance of the evidence of the following: First, that the contract was broken by the seller; second, that the defendant knew that the contract had been broken by the seller; third, having known of the seller's breach of contract or inability to perform, the defendant nevertheless paid the earnest money or down payment over to the seller *without the buyer's permission*; fourth, that because of the defendant's breach of the contractual duty, the plaintiffs occasioned a financial loss; fifth,

you must find by a preponderance of the evidence the amount of any financial loss sustained by the plaintiffs. . . . The defendant alleges in defense to the plaintiffs' cause of action that it was directed by the plaintiffs or their agent to disburse the earnest money deposit to Hickory Hills. If you find that the plaintiffs or their duly authorized agent directed or permitted the disbursement of the earnest money, that is a defense to the plaintiffs' claim under this cause of action. (Emphasis added.)

Plaintiffs made prompt objection to the charge.

An appellant challenging the trial court's instruction has the burden of showing that the charge was both erroneous and prejudicial. *Sachse v. Lumley*, 147 Vt. 584, 588, 524 A.2d 599, 601 (1987). The trial court must advise the jury thoroughly and accurately on each evidentiary point that is significant and necessary to an informed decision. *Id.* The court is obliged "to charge on every issue essential to resolution of the controversy." *Allen v. Uni-First Corp.*, 151 Vt. 229, 232, 558 A.2d 961, 963 (1988).

The trial court's charge to the jury was inaccurate, and mischaracterized plaintiffs' claim. The instructions properly discussed the contractual elements basic to the case, as well as the defense of permission. In addition, however, the court told the jury that even if it found that permission had not been given to release the funds, the plaintiffs still would have to prove that the purchase and sale agreement was "broken by the seller" and that the defendant realtor "knew that the contract had been broken by the seller." These additional requirements are irrelevant because of the specific terms of the written agreement. That document provided unambiguously that the funds could be disbursed only at the closing, or in the event that purchasers breached the contract.

Where contractual language is clear, parties to a contract are bound by the manifest meaning of their words. *Roy's Orthopedic, Inc. v. Lavigne*, 145 Vt. 324, 326, 487 A.2d 173, 175 (1985). Extraneous circumstances do not alter that meaning. *Allen Engineering, Inc. v. Summit Realty Corp.*, 137 Vt. 535, 536, 409 A.2d 559, 559 (1979) (per curiam). Courts must give

effect to the written words of an agreement. *Sullivan v. Lochearn, Inc.*, 143 Vt. 150, 153, 464 A.2d 745, 747 (1983). Here, the trial court omitted the specific terms of the contract from the jury charge; that omission constitutes reversible error when coupled with the additional "elements" the court included in the charge. The court instructed the jury that unless the plaintiffs could prove *all* the elements set forth in the charge, plaintiffs could not prevail. All plaintiffs had to prove, however, was that the realtor paid out the escrowed deposit without their permission (express or implied), because the realtor contractually agreed not to do so prior to a closing or a breach by the buyers. No closing took place, and the evidence on "permission" was ambiguous.

■ Next, plaintiffs argue that the trial court erred in its charge to the jury concerning the absence of a listing agreement and the payment of a commission to Trask & Waite. The court instructed:

> Now, ladies and gentlemen, there has been testimony about whether the defendant was entitled to a broker's commission under the contract. This is not a matter for your consideration. The only issue for your resolution is whether the plaintiffs are entitled to a refund of their earnest money plus interest.
>
> The absence of a listing agreement between Hickory Hills, Inc. and the defendant Trask & Waite Realtors, Inc. is of no consequence to the plaintiffs' cause of action.

Trask & Waite's commission was paid out of the funds released by John Waite. Because the defense of permission was a question for the jury, and because the charge on the contractual elements in the case called the jury's verdict into question, we cannot say that the trial court was correct in stating that the jury should not consider the matter in its deliberations. The lack of a listing agreement was relevant at least on the question of whether defendant acted properly in releasing the funds, since his commission was paid out of those funds.

■ Plaintiffs' final claim concerns the trial court's refusal to permit plaintiffs' attorneys to split the closing and rebuttal arguments between them. In *Drown v. Oderkirk*, 89 Vt. 484, 489, 96 A. 11, 13 (1915), we held that the trial court has discretion in controlling arguments of counsel and this discretion is not reviewable, absent abuse. Of course, it would have been perfectly proper for the court to allow plaintiffs' counsel to divide the argument between them, as requested, but we are unable to find an abuse of discretion herein. Furthermore, any error was harmless. The party claiming error has the burden of showing prejudice, and plaintiffs have failed to show any harm resulting from the trial court's refusal to permit a dual argument. The record does not indicate that the closing argument suffered because of single, rather than joint, delivery.

*Reversed and remanded.*