## State of Vermont v. Richard Davis

[683 A.2d 1]

No. 95-090

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 21, 1996

*Jeffrey L. Amestoy*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Paolini*, Barre, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals his jury convictions for kidnapping, 13 V.S.A. § 2405, and simple assault, 13 V.S.A. § 1023. He argues that the allocation of the burden of proof under 13 V.S.A. § 2405(b) violates the United States and Vermont Constitutions and that the trial court erred when it failed to hold a competency hearing. Defendant also argues that the court committed other trial errors regarding the admission or exclusion of evidence. We affirm.

On July 10, 1993, the victim, then married to defendant, left him and obtained a restraining order against him. She filed for divorce on July 23, and defendant subsequently threatened her with violence if she proceeded with the divorce. On August 16, defendant entered the victim's home and waited there for her to return from work. When the

victim opened the door, defendant sprayed her in the face with pepper spray. He struck her in the face, hitting her in the jaw and nose. He then pulled her into the bedroom by her hair, while at the same time kicking her. After throwing the victim onto the bed, defendant tore her clothes from her body while continuing to strike her. Picking up some duct tape, defendant told her to put her hands behind her back and that she was "going for a ride." She initially refused, but he threatened to beat her more if she did not cooperate with his request.

After allowing the victim to put some clothes back on, defendant taped her hands behind her back. He led her to her car, where he forced her face down into the back seat. At that time, he said, "I put a gun in the trunk. You're going to go with me and watch me while I shoot myself." Defendant then drove the car up an isolated mountain road. After a while, he stopped the car and spoke to her in a desultory manner, saying that he was not sure whether he was going to shoot himself, or her, or her and then himself.

Defendant moved the victim to the front seat and continued to drive. While driving, he continued to threaten the victim with violence. As they passed a home with people outside, the victim yelled for help. In response, defendant sped up and struck the victim in the jaw. Defendant then turned off the road and drove across a field, stopping at the edge of a wooded area. Defendant dragged the victim from the car and towards the woods. Before reaching the woods, he severed the tape binding her wrists and said, "Go on. Get out of here." As the victim fled, defendant drove the car towards her. She jumped into a grove of trees, and he drove off.

The victim walked to the road and flagged down a passing motorist. The motorist took the victim to an emergency room in St. Johnsbury, where she was found to have a laceration above her right eye, bruising and swelling around both eyes, a swollen left cheek and jaw, a broken nose, scratches and abrasions on her neck, and abrasions on her back and buttocks.

The incident was reported to the police and a bulletin to "be on the lookout" for defendant, possibly driving the victim's car, was broadcast to officers on patrol. Later that evening, two state troopers drove to defendant's mother's trailer, where defendant lived, to look for him. Before knocking on the trailer door, the officers noticed the victim's automobile parked seventy feet behind the trailer. Although the troopers did not find defendant at that location, they had the victim's automobile removed by a wrecker and taken to a secure location. The victim's automobile was subsequently searched with her consent.

The police also looked for defendant at the victim's home, and searched for evidence of the crime while there. They located a paper bag containing a number of items from the victim's home, but which she had not placed in the bag. One item, not from her home but found in the bag, was a United States Navy knife and sheath, both wrapped in a vinyl tent bag. At trial, the victim testified that she had never seen the knife before, and did not know to whom it belonged. She recognized the tent bag as from a tent that she had purchased; she had given the tent to defendant's parents when they came to collect defendant's belongings after the victim and defendant separated.

Defendant was apprehended and subsequently charged with kidnapping and aggravated assault. The information charging defendant with kidnapping reflected the statutory punishment of life imprisonment. On November 23, 1993, defendant entered into a plea agreement, and the State amended the charge to mitigated kidnapping, with a maximum sentence of thirty years imprisonment. Defendant later withdrew his plea with the permission of the court. Before trial, however, the information was not amended to again reflect punishment of life imprisonment.

Before trial, the State filed a motion in limine seeking to exclude evidence of the victim's psychiatric hospitalizations in 1969 and 1984. The defense sought to introduce medical records showing the victim had attempted suicide and had been hospitalized for observation. The medical records also included references to her use of alcohol. The defense sought to use the evidence to impeach the victim. The trial court excluded the evidence on the ground that it was not probative of the victim's truthfulness. The court also found the evidence prejudicial to the victim.

Before trial, defendant's attorney filed a motion for a competency evaluation, and the court ordered an examination. The competency evaluation was performed on October 5, 1993. The psychiatric examiner's report noted that defendant was of low-average intelligence and had no previous inpatient or outpatient psychiatric history. In the report, the examiner also stated that defendant understood the charges against him, understood the roles of the participants in the criminal proceeding, and was capable of assisting in the preparation of his defense. A competency hearing, scheduled for November 9, 1993, was cancelled when defendant entered into a plea agreement. When defendant sought to change his plea, defense counsel stipulated to the findings in the psychiatric report and agreed that defendant was competent to stand trial.

A different attorney was assigned to defendant for the trial. Defendant's second attorney told the court that he was "concerned about competency" and noted that defendant had been uncooperative because he "either doesn't have the ability or he's unwilling and stubborn." The trial judge noted that, based on his own observations and his review of the competency report, he was not concerned about defendant's competency. Nevertheless, the judge suggested that a mental health screener evaluate defendant to determine whether a full-scale competency examination should be performed. Defense counsel told the court that that course of action was "acceptable."

The following morning, the court provided defendant with a mental health screener. Defendant refused to speak with the mental health screener, so the mental health screener reviewed the competency report and spoke to defense counsel about defendant's behavior. The mental health screener concluded that defendant's unwillingness to cooperate with counsel resulted from immaturity rather than mental illness. Defense counsel "continue[d] to have some concerns" and said, "I don't know if that's paranoia or not, but he feels very isolated, feels that nobody has listened to him." The trial judge responded that "it does not appear to me there is a competency issue." The competency issue did not arise again.

During trial, defendant filed two motions seeking the recusal of the trial judge, the first before trial and the second before sentencing. The first motion sought recusal on the ground that the judge had presided over defendant's change-of-plea hearing. The administrative judge denied defendant's first motion because the trial judge's prior involvement in a judicial capacity was insufficient grounds for disqualification. The second motion sought the trial judge's recusal from sentencing because information from defendant's competency evaluation had erroneously been included in the presentence investigation report, which the trial judge had reviewed. On defendant's request, however, the trial judge struck from the report defendant's competency evaluation and ordered the preparation of a new report by a different probation officer. The administrative judge also denied defendant's second recusal motion.

A jury convicted defendant of kidnapping and of the lesser-included offense of simple assault. The trial judge sentenced defendant to life imprisonment, with not less than twenty-five years to serve.

I.

Defendant argues that the kidnapping statute, 13 V.S.A. § 2405, unconstitutionally shifts the burden of proof to the defendant.

We conclude that the legislative allocation of the burden of proof in § 2405(b)[1] is clearly permissible under the United States and Vermont Constitutions.

In *Patterson v. New York*, 432 U.S. 197 (1977), the United States Supreme Court upheld a New York law substantially similar to § 2405. At issue in *Patterson* was a statute that defined second-degree murder as causing the death of another with the intent to do so, but which also provided an affirmative defense of extreme emotional disturbance. If the defendant could prove by a preponderance of the evidence that he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation, the crime was reduced from murder to manslaughter. The defendant challenged the statutory allocation of the burden of proof as a violation of due process. The Supreme Court upheld the law, noting that the victim's death, the defendant's intent to kill, and causation were all facts that the State was required to prove beyond a reasonable doubt, *id.* at 205, and that the affirmative defense did not require the defendant to disprove any of these facts. *Id.* at 206-07.

Defendant argues that the safe-release defense requires him to disprove an element of the State's prima facie case. We disagree. Under § 2405(a), the State must prove that defendant knowingly restrained the victim with the intent to commit one of several enumerated acts: in this case, that defendant intended to inflict bodily injury upon the victim or intended to place her in fear that she would be subjected to bodily injury. 13 V.S.A. § 2405(a)(1)(C). The defense of safe release requires a defendant to prove that he released the victim without causing serious bodily injury to her. 13 V.S.A. § 2405(b). The elements of the crime of kidnapping and of the safe-release defense differ in two respects: first, the State must prove defendant's *intent* to inflict bodily injury while a defendant must prove absence of *actual* serious bodily injury, and second, the crime of kidnapping involves ordinary bodily injury while the safe-release defense involves *serious* bodily injury. The elements of the crime of kidnapping and of the affirmative defense of safe release are therefore not coextensive.

---

[1] "Kidnapping is punishable by a maximum sentence of life imprisonment . . . . It is, however, an affirmative defense which reduces the penalty to imprisonment for not more than 30 years . . . that the defendant voluntarily caused the release of the victim alive in a safe place before arraignment without having caused serious bodily injury to the victim." 13 V.S.A. § 2405(b).

Defendant also argues that § 2405(b) violates the Vermont Constitution. In *State v. Messier*, 145 Vt. 622, 497 A.2d 740 (1985), we responded to a similar argument regarding the affirmative defense of insanity. We first noted that this Court has never interpreted the Vermont Constitution to require the State to prove the absence of mitigating or exculpatory matters. *Id.* at 627, 497 A.2d at 743. We then concluded that the Vermont Constitution does not require the Legislature to choose between eliminating an affirmative defense altogether or requiring the State to prove its absence. *Id.* Accordingly, § 2405(b) does not violate the Vermont Constitution.

Defendant further argues that under the factor analysis in *State v. Baker*, 154 Vt. 411, 417, 579 A.2d 479, 482 (1990), the burden of proof should be allocated to the State. The *Baker* analysis, however, applies only where the State is not constitutionally required to bear the burden of proof and where the Legislature has not declared which party should bear the burden of proof. Because the Legislature has declared, by the use of the words "affirmative defense" in § 2405(b), that defendant bears the burden of proof, we decline defendant's invitation to apply the *Baker* analysis. See *Messier*, 145 Vt. at 627, 497 A.2d at 742 (words "affirmative defense" in statute indicate legislative intent to place burden of proof on defendant).[2]

## II.

Defendant next argues that the trial court erred when it refused to hold a competency hearing. The trial court has a duty to order a psychiatric examination and conduct a competency hearing if there is "reason to believe that [the defendant] may be incompetent to stand trial." *State v. Lockwood*, 160 Vt. 547, 554, 632 A.2d 655, 660 (1993); 13 V.S.A. § 4817(b). Competency to stand trial depends on whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the

---

[2] Defendant contends that the trial court erred by failing to require the State to present evidence negating safe release to survive defense motions to dismiss for lack of prima facie case and for judgment of acquittal. Defendant argues that safe release is an element of the State's prima facie case and, citing the Model Penal Code, argues that the Legislature did not intend safe release to be a defense. We disagree because it is clear from the language of § 2405(b) that the Legislature intended safe release to be an affirmative defense. See *Vermont Dev. Credit Corp. v. Kitchel*, 149 Vt. 421, 428, 544 A.2d 1165, 1169 (1988) (statute plain on its face is not subject to construction but must be enforced according to its express terms).

proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). The decision to hold a competency hearing is within the discretion of the trial court. *State v. Welch*, 159 Vt. 272, 277, 617 A.2d 427, 430 (1992).

■ Defendant contends that his decision to absent himself from the courtroom during the victim's testimony, his uncooperativeness with his attorney, and his refusal to speak with the mental health screener are "indicia of incompetence" that the trial judge ignored. The psychiatric examiner found defendant to be of low-average intelligence and without a history of mental illness. He also concluded that defendant understood the charges against him and the roles of the parties in the criminal proceeding, and was capable of assisting in the preparation of his defense. Defendant stipulated to these findings and to his competency to stand trial. Approximately eight months later, the question of defendant's competency arose again when defendant requested that he be absent from the courtroom during the victim's testimony. While possibly detrimental to his defense, his request was clearly within his rights. See *State v. Bradley*, 164 Vt. 346, 349, 670 A.2d 811, 813 (1995). And while defendant may have been uncooperative with defense counsel at that time, he later conferred with counsel regarding strategic decisions such as whether to testify. None of defendant's acts would suggest that he lacked the *capacity* to participate in his defense, only the desire or, according to the mental health screener, the maturity to do so. *Drope v. Missouri*, 420 U.S. 162, 171 (1975) (defendant incompetent to stand trial if he lacks *capacity* to consult with counsel and prepare defense). Defendant's acts, combined with the competency findings, did not create reasonable grounds to doubt defendant's competency, and the trial court did not err by refusing to order an additional competency examination or by refusing to hold a competency hearing.

### III.

Defendant next argues that the administrative judge erred by denying defendant's motions for recusal of the trial judge. He argues that the trial judge should have recused himself from trial because he had presided over defendant's change-of-plea hearing and from sentencing because he had viewed privileged information from defendant's competency evaluation that had been erroneously included in the presentence investigation report.

■ A motion for recusal will not ordinarily be granted simply because the judge participated in earlier proceedings regarding the

same case. *Klein v. Klein,* 153 Vt. 551, 554, 572 A.2d 900, 902 (1990). We presume the integrity and honesty of judges, and the moving party has the burden to show otherwise. *Id.* at 554, 572 A.2d at 903. Here, the trial judge's participation in the change-of-plea hearing is insufficient, without an affirmative showing of bias or prejudice, to justify recusal from trial.

■ The trial judge's exposure to defendant's privileged statements does not justify recusal from sentencing. *State v. Dupree,* 151 Vt. 644, 644, 559 A.2d 693, 693 (1989) (mem.) (we tolerate exposure to inadmissible evidence by judges in bench trials where we would not tolerate exposure to same evidence by jury). Here, the trial judge struck defendant's privileged statements from the presentence investigation report and ordered the preparation of a new report by a probation officer unfamiliar with the case. The new report was to be prepared without reference to defendant's privileged statements to the psychiatric examiner. The trial judge also ordered all copies of the tainted presentence investigation report returned and sealed. Given the trial judge's handling of this issue, we are convinced that no bias or prejudice to defendant resulted from the viewing of defendant's privileged statements. Moreover, we see nothing in the trial judge's statements at sentencing that indicates that he relied on the redacted portions of the presentence investigation report. The administrative judge did not abuse his discretion by denying both of defendant's motions for recusal. *Ball v. Melsur Corp.,* 161 Vt. 35, 40, 633 A.2d 705, 710 (1993) (discretionary ruling of administrative judge not disturbed unless record reveals no reasonable basis for decision).

## IV.

■ Defendant next contends that the trial court erred when it denied his motion to suppress evidence found during a search of the victim's car. Specifically, he argues that the court's finding that the car was not on property leased by defendant's mother[3] is unsupported by the evidence, and therefore, the court's conclusions based on that finding are erroneous. The court concluded that defendant lacked standing to assert a challenge to the search because his mother did not have a leasehold that extended to the land on which the victim's

---

[3]The trial court, citing *State v. Wood,* 148 Vt. 479, 489, 536 A.2d 902, 908 (1987), considered defendant to have the same possessory interest in the leasehold as his mother because he lived with her at the time.

car was parked. The court also concluded that, notwithstanding the extent of the leasehold, the land on which the victim's car was located constituted an open field under *United States v. Dunn*, 480 U.S. 294, 301 (1987). Because defendant challenges only one of two alternate bases for the court's decision, he was not prejudiced by any possible error with respect to the challenged basis for the decision.

## V.

Defendant argues that the trial court erred by granting the motion in limine seeking exclusion of evidence of the victim's psychiatric hospitalization and that the exclusion of this evidence violated his Confrontation Clause rights.

As evidence of specific instances of conduct, the proffered evidence must satisfy V.R.E. 608 to be admissible. "Specific instances of the conduct of a witness . . . may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning his character for truthfulness or untruthfulness . . . ." V.R.E. 608(b). Discretion lies with the court to weigh the probative value and prejudice to the witness of cross-examination on the prior conduct. *State v. French*, 152 Vt. 72, 80, 564 A.2d 1058, 1062 (1989).

The victim's prior suicide attempts have minimal probative value on the issue of the witness's truthfulness. Moreover, what little probative value exists is further diminished by the ten- and twenty-four-year lapses of time between the suicide attempts and the trial. Because of its stigmatizing and embarrassing nature, the impeachment evidence here also has a significant potential to prejudice the complainant. Reporter's Notes, V.R.E. 608 (rule seeks to prevent cross-examination of unnecessarily embarrassing scope). The trial court did not abuse its discretion by excluding the evidence of the witness's prior suicide attempts, and because the court did not abuse its discretion, defendant's Confrontation Clause argument is without merit. *French*, 152 Vt. at 79, 564 A.2d at 1062 (threshold question for Confrontation Clause is whether court prohibited defendant from engaging in appropriate cross-examination).

## VI.

Defendant next argues that the trial court erred when it admitted defendant's knife, which was found by police in the victim's

home. He argues that the knife had no probative value because the issues of defendant's presence at the victim's home and his identity as her assailant were uncontested, and that he had stipulated to his identity. The record indicates, however, that defendant did not stipulate to his presence in the victim's home or to his identity as her assailant; he stipulated merely that he was the person to whom a witness was referring in his testimony. The knife was therefore probative of his presence in the victim's home and his identity as her assailant.

He also argues that the knife was prejudicial because "[b]oth the kidnapping and assault statutes require an intent to cause bodily injury and the coercive aspects of a knife wielding kidnapper are beyond dispute." If anything, defendant's argument highlights the probative value of the knife with respect to his intent to inflict bodily injury upon the victim. While evidence of his guilt presented by the State may be prejudicial to him, it is not necessarily *unfairly* prejudicial and thereby excluded under Rule 403. The trial court did not abuse its discretion by admitting the knife into evidence. *Quirion v. Forcier*, 161 Vt. 15, 21, 632 A.2d 365, 369 (1993) (court has broad discretion in ruling on admissibility of evidence under Rule 403 and burden of showing abuse is heavy one).

## VII.

Defendant argues that he was denied due process because the information did not fully apprise him of the basis and nature of the charge such that he could prepare his defense. See *State v. Williams*, 160 Vt. 615, 616, 627 A.2d 1254, 1255 (1993) (mem.). He asserts that, as a result of the penalty listed in the information, he thought that he would not need to prepare the affirmative defense of safe release in 13 V.S.A. § 2405(b). Defendant has failed to demonstrate that he suffered any prejudice as a result of the State's failure to amend the information after defendant withdrew his plea. Defense counsel litigated the affirmative defense of safe release and requested a jury instruction on the issue. Moreover, the record contains numerous statements by defense counsel indicating that the defense knew the State sought life imprisonment. Therefore, we find unpersuasive defendant's claim that he did not receive sufficient notice of the charge to prepare his defense. See *In re Stevens*, 146 Vt. 6, 9-10, 497 A.2d 744, 747 (1985) (where defense counsel dealt with case as one for aggravated assault at all stages of proceedings, defendant not prej-

udiced by failure of information to allege element of aggravated assault).

## VIII.

 Finally, defendant argues that the trial court erred when it prohibited defense counsel from telling the jury in his closing argument that evidence not presented by the State was exculpatory. In his closing argument, defense counsel pointed out the evidence that the State did not present. He may properly point out the absence of more persuasive types of evidence and argue that the State has not proved its case beyond a reasonable doubt. He may not, however, tell the jury that the absent evidence would have been exculpatory if presented. *State v. Blakeney*, 137 Vt. 495, 504, 408 A.2d 636, 641-42 (1979) (counsel must confine argument to evidence presented and inferences properly drawn from it). Also, he may not encourage the jury to speculate about the State's motive for not pursuing or presenting such evidence. *State v. Emerson*, 149 Vt. 171, 177, 541 A.2d 466, 470 (1987) (improper for defendant to argue that State withheld exculpatory evidence without evidence supporting that argument). The trial court did not err when it ruled that defense counsel's argument was improper.

*Affirmed.*