## STATE of Vermont v. Thomas N. KAROV

[756 A.2d 1236]

No. 99-225

May 10, 2000. Defendant appeals from a jury trial convicting him of first-degree aggravated domestic assault, aggravated assault, two charges of kidnapping, and a violation of an abuse prevention order. Defendant claims that the convictions for aggravated domestic assault and aggravated assault violate the Double Jeopardy Clause of the United States Constitution and that the trial court erred in sustaining an objection to defendant's closing argument and in denying defendant's motion to suppress. We affirm.

In the evening of September 11, 1997, defendant Thomas Karov went to the home of his ex-wife, Robin Karov. He was angry about statements she made in their divorce case, on appeal to this Court. He was waving a sheaf of papers and began hitting her with them and yelling at her. She told him he was not supposed to be there, as she had a restraining order preventing him from having any contact

with her, and he pulled out a gun. He pointed it at her, saying God had told him to kill her, and when she pushed it away from her head, it went off. She dashed outside and he came outside after her. He told her to stop, that he could kill her there just as easily as in the house. She stopped running.

He then dragged her back to the house and began beating her. He hit her on the left side of her head with the gun, and continued hitting and kicking her when she fell to the floor. At some point, her friend Eunine Bailey arrived. Defendant grabbed Bailey and dragged her inside the trailer. Bailey testified that she saw Robin sitting on the couch with a bloody nose, blood matted in her hair and blood running down the left side of her face. Defendant then held the two women hostage for several hours, threatening to kill them and to kill himself. Eventually, Bailey convinced defendant to give her the firing mechanism of the gun, then the gun itself, and finally, to let both of them leave. At about 12:30 a.m., they called Bailey's husband and asked him to call the police. The women went to the hospital, where Robin's injuries were treated.

Defendant was charged with five crimes arising out of the incident, which lasted approximately four hours. He was charged with kidnapping both Robin and Bailey, and he was charged with violating the abuse prevention order, as well as aggravated assault and aggravated domestic assault. The amended information charged him with first-degree aggravated domestic assault for the act of threatening to kill a family member, Robin, while armed with a gun, and with aggravated assault for the act of causing bodily injury to Robin with a gun. His case was tried to a jury, and he was convicted of all five counts.

On appeal, defendant first argues that the convictions for aggravated domestic assault and aggravated assault violate the Double Jeopardy Clause of the United States Constitution.* That clause provides that no person may "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. This provision has been incorporated into the Fourteenth Amendment and applies to the states. See *Benton v. Maryland*, 395 U.S. 784, 795 (1969). The clause prevents multiple prosecutions for the same crime, "as well as the imposition of multiple punishments for the same offense." See *State v. Grega*, 168 Vt. 363, 382, 721 A.2d 445, 458 (1998) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

As best we can discern, defendant is making a facial challenge to the validity of the aggravated domestic assault and aggravated assault statutes. He argues that aggravated assault is a lesser-included offense of aggravated domestic assault and therefore, when he was charged under both statutes, he was put in double jeopardy. Defendant claims that his convictions fall into the second category of double jeopardy, because the convictions for "using his firearm to threaten and cause serious bodily injury to his ex-wife violate[] his constitutional right to be free from double jeopardy for the same offense."

The central flaw in defendant's argument is that he misunderstands the nature of his crimes. He insists that he is being punished twice for the "same of-

---

* 13 V.S.A. § 1043(a)(2) provides, "[a] person commits the crime of first degree aggravated domestic assault if the person . . . is armed with a deadly weapon and threatens to use the deadly weapon on a family or household member." The evidence showed that he told Robin he would kill her while he was holding a gun. 13 V.S.A. § 1024(a)(2) provides, "[a] person is guilty of aggravated assault if he . . . purposely . . . causes bodily injury to another with a deadly weapon." The evidence showed that he struck Robin in the head with the gun.

fense." In fact, he received two sentences for two different crimes. Defendant was *not* charged under these two statutes for the same act; he was charged under these statutes for two different acts. The aggravated domestic assault conviction resulted from his threat to kill his family member, Robin, made while he was holding a loaded gun. The aggravated assault conviction, in contrast, resulted from his striking her in the head with the gun. These are two separate acts, charged as separate crimes. A single criminal goal may be effected by multiple criminal acts, and those multiple criminal acts may be separate and distinct offenses. See *State v. Fuller*, 168 Vt. 396, 399, 721 A.2d 475, 479 (1998) (holding that multiple sexual assaults were not one continuous event but rather separate crimes). See also *Jordan v. State*, 2000 WL 190003, at *2 (Ga. Ct. App. 2000) (where victim was robbed at gunpoint, briefly escaped but was grabbed and beaten to prevent escape, offenses of kidnapping and attempted armed robbery "were two separate, distinct, and sequential crimes against the victim.").

Defendant committed several crimes on September 11, 1997; he has been convicted of five of them, including threatening to kill Robin and striking her in the head with a gun. The Legislature may criminalize multiple, separate acts that take place in a criminal episode, such as kidnapping and assault, or multiple sexual assaults. See *Fuller*, 168 Vt. at 401-02, 721 A.2d at 480. Defendant's convictions for aggravated assault and aggravated domestic assault do not place him in double jeopardy; the Legislature has chosen to penalize several acts that defendant committed as separate crimes. He has simply been convicted for two distinct crimes among several that he committed. Thus, the problem he claims exists between the aggravated domestic assault and assault statutes is, with respect to him, hypothetical.

He lacks standing to raise the hypothetical problem he suggests because he himself has not been charged in a way that creates double jeopardy. Defendant's right not to be placed in double jeopardy is personal. See *State v. Maunsell*, 170 Vt. 543, 546, 743 A.2d 580, 584 (1999); *State v. Duval*, 156 Vt. 122, 130, 589 A.2d 321, 326 (1991) (Dooley, J., dissenting). Such personal constitutional rights "'may not be vicariously asserted.'" See *State v. Wood*, 148 Vt. 479, 484, 536 A.2d 902, 905 (1987) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969). Therefore, despite the fact that the parties litigated this case by applying the standard analysis under *Blockburger v. United States*, 284 U.S. 299, 304 (1932), such analysis is inapposite because defendant is not in one of the two situations giving rise to double jeopardy concerns. He is not subject to a second prosecution for the same crime, nor prosecuted for multiple crimes arising out of the same act. See *Grega*, 168 Vt. at 382, 721 A.2d at 458. He does not meet the threshold test.

Defendant also suggests that double jeopardy could arise if he had been charged under both subsections of the aggravated domestic assault statute, similar to the situation in *State v. Ritter*, 167 Vt. 632, 714 A.2d 624 (1998) (mem.). There, the defendant was charged with two counts of second-degree aggravated domestic assault for committing an assault on a family member with two aggravating conditions. We held in *Ritter* that the Legislature had clearly intended the two subsections of the second-degree aggravated domestic assault statute to be alternative ways of committing domestic assault, such that one act should not be punished by two counts of second-degree aggravated domestic assault. See *id.* at 633-34, 714 A.2d at 625-26. Therefore, we vacated one of the defendant's convictions. See *id.* at 634, 714 A.2d at 626. In the instant case, defendant analogizes to *Ritter* by theorizing that he could have

been convicted of two counts of first-degree aggravated domestic assault, one count under each subsection: (1) attempting or causing serious bodily injury to a family member and (2) threatening a family member. Defendant was not charged in this way, however, and therefore, whatever the result for such a hypothetical defendant might be, this defendant lacks standing to challenge the statute vicariously. See *Wood*, 148 Vt. at 484, 536 A.2d at 905.

Defendant next contends that the trial court committed reversible error by sustaining the State's objection to speculation in defendant's closing argument. Defense counsel argued in closing that defendant was paranoid, saying that defendant viewed every moment, including the closing arguments, through his paranoia, thinking that everyone was plotting against him, even defense counsel and the jurors. The State objected, and the court sustained the objection. On appeal, defendant argues that his expert testimony established that he suffered from paranoia and thus that the closing argument simply drew reasonable inferences from the evidence. We have held that counsel "should confine argument to the evidence of the case and inferences that can properly be drawn from it." See *State v. Blakeney*, 137 Vt. 495, 504, 408 A.2d 636, 641-42 (1979). Control of closing arguments is committed to the trial court's discretion and is reviewed only for abuse of that discretion. See *Arnold v. Cantini*, 154 Vt. 142, 147, 573 A.2d 1193, 1195-96 (1990).

Defendant's expert, Phillip Kinsler, testified about two meetings he had with defendant in the fall of 1997. Kinsler repeatedly described defendant's behavior and thinking during these interviews as paranoid. After discussing various disorders and conditions, defense counsel asked Kinsler to apply those concepts to defendant in particular. Counsel then clarified that he meant for Kinsler to talk about defendant's state "[b]ack in September." Kinsler then analyzed the events of September 11, 1997, in the context of his observations of defendant in the month following the incident. Therefore, the expert's testimony was explicitly addressed to defendant's state of mind at the time of the crimes, and did not provide a basis for counsel to infer, in closing argument, what defendant's state of mental health was at the time of the trial. Defense counsel's argument was indeed speculative, and therefore properly restricted. See *State v. Davis*, 165 Vt. 240, 252, 683 A.2d 1, 8 (1996) (holding defense may not invite jury to speculate about exculpatory evidence); *State v. Roberts*, 154 Vt. 59, 72-73, 574 A.2d 1248, 1254 (1990) (demeanor of defendant who did not testify was not relevant evidence and defense counsel could not urge jury to make speculative inferences about it). Moreover, defendant's state of mind at the time of trial is irrelevant to his state of mind at the time of the crimes; therefore, defendant cannot have been prejudiced by the restriction of closing argument on an irrelevant point.

Finally, defendant contends that the court erred in denying his motion to suppress statements made by defendant to police officers while being taken from his ex-wife's home to the police barracks. Defendant had not yet been given *Miranda* warnings. He made comments to the police to the effect of "I admit she got thumped last night" and "a higher power told me to do it." Defendant concedes that *Miranda* warnings are required only when a person is subjected to custodial interrogation. See *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The United States Supreme Court has defined interrogation as limited to "words or actions . . . that the police should know are reasonably likely to elicit an incriminating response." See *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Although defendant was in custody at the time, there is no evidence that he was

being interrogated. He was being transported to the police barracks, and the trial court found that his statements were spontaneous and voluntary. Where there is no evidence that the police elicited the comments, much less that they were conducting a custodial interrogation, the trial court properly admitted the statements.

*Affirmed.*